■ In the Matter of DOROTHY T., Respondent, v CARL J. B., Appellant.—In a proceeding to determine child custody pursuant to Family Court Act article 6, in which the mother moved for modification of an order of the Family Court, Queens County, dated June 7, 1989, granting the father custody of the parties' daughter and limiting the mother's supervised visitation, the father appeals, by permission, from an order of the Family Court, Queens County (DePhillips, J.), dated November 28, 1990, which, after a hearing, inter alia, denied his motion to suspend the mother's supervised visitation pending a final determination of the custody proceeding.

Ordered that the order is modified, on the facts and as an exercise of discretion, by deleting the provision thereof which denied that branch of the father's motion which was to suspend overnight supervised visitation pending determina-

tion of the custody proceeding, and substituting therefor a provision granting that branch of the motion; as so modified the order is affirmed, without costs or disbursements, and the matter is remitted to the Family Court, Queens County, for an immediate determination of the mother's daytime visitation schedule pending determination of the custody proceeding, which is to be under the supervision of a court-appointed mental health expert or the Family Conflict Program of the Department of Probation, and for an expedited hearing on the issues of custody and visitation in accordance herewith.

On or about February 23, 1990, the mother petitioned for a modification of a prior Family Court order dated June 7, 1989, which granted custody of the parties' daughter, Kiley, to the father and limited her supervised visitation with the child to two weekends per month. In her petition the mother requested more extended visitation without supervision. She subsequently moved for a change of custody. At issue is the father's motion, one of several brought by him to further curtail the mother's visitation, for suspension of the mother's supervised visitation pending determination of her application for a change of custody. In support of his motion, the father alleged that Kiley told him that while she was visiting her mother over the weekend of November 10, 1990, the mother hit her in the head, twice, with a plumber's plunger.

The overriding concern in this case, as in all custody-visitation cases, is the best interests of the child. A thorough review of the record discloses a sad and regrettable story. Kiley was born on August 6, 1982. On May 13, 1985, the Commissioner of Social Services filéd a petition against her parents alleging that on or about May 2, 1985, Kiley, then just two-and-one-half years old, had incurred a fractured skull, the second skull fracture suffered by her. That proceeding concluded when both parents admitted to neglect of the child. Kiley was then placed in the care of her paternal grandparents. The father next claimed that three months later, in August 1985, while Kiley was still in the custody of her grandparents, but during an overnight visit with her mother, she suffered a collar-bone injury. The record reveals no satisfactory explanation as to the cause of this injury. The record does not disclose any further trauma to the child until an incident alleged to have occurred in May 1989, which Kiley reported to her treating psychologist, Dr. Goldklang, ten months later in March 1990. Regarding that incident, Dr. Goldklang, who was retained by Kiley's father, stated that Kiley told him that her mother hit her with a frying pan and then banged her head against the

wall. The most recent incident involving the plumber's plunger, which is alleged to have occurred on or about November 10, 1990, is the focal point of this appeal.

Although the medical testimony is far from conclusive, Dr. Fogel, the psychologist who conducted a court-ordered evaluation of the parties, and Dr. Goldklang, both agree that supervision of the mother's visitation by her present husband is not in Kiley's best interest and that visitation should be supervised by a more neutral party and restricted to daytime.

We find that under the totality of the circumstances, the safety and best interests of the child would be served by restricting the mother's visitation with Kiley to the daytime and by expediting the ongoing custody hearing.

Accordingly, we modify the Family Court order by eliminating the child's overnight visitation with the mother, and by directing that daytime visitation be supervised by the Department of Probation or a court-appointed health professional. Moreover, we direct that the custody hearing presently in progress be expedited and that the Family Court order psychiatric and psychological forensic evaluations of the mother, the father, and Kiley, to be conducted by an independent court-appointed expert or experts, and to be available at the time of such hearing. We also see the need for, and direct that, the Family Court order a comprehensive physical examination of Kiley as well as the continuation of her present psychological therapy. Brown, J. P., Harwood, Miller and Ritter, JJ., concur.